## Maxwell's Administratrix v. Louisville & Nashville Railroad Company.

(Decided March 25, 1932.)

STEPHENS & STEELY and J. J. TYE for appellant.

ASHBY M. WARREN and BLACK & OWENS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—Affirming in part and reversing in part.

A demurrer having been sustained to appellant's petition and she having declined to plead further, that petition was dismissed and she appeals.

This suit was brought by appellant, Carrie Maxwell, as the administratrix of the estate of her deceased husband, E. C. Maxwell, to recover from the Louisville & Nashville Railroad Company, M. O. Seamons, and John V. Smith, damages for the death of her husband. In her petition she averred that her husband was a freight conductor for the appellee railroad company, that the appellees Seamons and Smith were railroad policemen in its employ; that for some time prior to the death of her husband there had been a good deal of thieving from the railroad cars of the railroad company while they were in the yards at Corbin, Ky., and that the railroad detectives Seamons and Smith were directed by their superiors to investigate, find out, and arrest those guilty of such thievery; that on the night of August 16, 1929, these detectives went into the yards at Corbin and concealed themselves near the tracks; that while they were thus concealed, a freight train on which her husband was conductor came into the yards for the purpose of being broken up and reassembled into trains for distant points; that her husband, in ignorance of the nearby presence of the railroad detectives, got out of his caboose and walked along the side of his train to report in where he had to report on coming in from a run; and that as he was walking beside his train in the dark, the railroad detectives, to quote from the petition, "with wanton recklessness, great carelessness and gross negligence both began shooting towards and in the direction of and at the said E. C.

Maxwell, and a ball fired by one of said shots thus fired wantonly, carelessly and negligently entered the right thigh'' and so wounded him that as a direct and proximate result of such shot he died early the next morning. Appellant further averred that on the shooting of her intestate, he was carried into the switch tender's shack and that the switch tender of the railroad communicated the fact of her intestate having been shot to the railroad's chief officer and agent in charge of the Corbin yards; that close by the Corbin yards was a hospital to which by virtue of a contract between it and the railroad company the latter's injured employees were carried for treatment, and to which her intestate could and should have been carried immediately for treatment, but that although the railroad detectives who had shot him and the other agents, servants, and employees of the railroad company took immediate charge of the person of E. C. Maxwell, and although he was then suffering from a great flow of blood, they rendered him no first aid and made no attempt to staunch the flow of blood, and the railroad through its agent failed to notify the hospital to come for E. C. Maxwell for a considerable period of time; that after about three hours, E. C. Maxwell was carried to the hospital; that when he went there his wound had by the process of coagulation ceased to bleed, but that the hospital authorities in order to ascertain the extent of the wound probed it with a steel probe, thereby reopening the wound and causing it to bleed again in great quantities; and that by reason of this loss of blood, coupled with the previous loss of blood, E. C. Maxwell was so weakened in body that he died the next morning.

It is obvious that the court erred in sustaining the demurrer of the railroad detectives to this petition, as it amply charges them with having negligently, wantonly, and carelessly shot and killed the appellant's intestate and to that extent at least the petition was good as against them. As to the railroad, however, the court properly sustained its demurrer to the petition. It is nowhere averred that in shooting E. C. Maxwell the railroad detectives did so in the course or by virtue of their employment or to advance any purpose or interest of their employer. It is not alleged that these detectives were negligent or wanton in the discharge of their duties or in following the instructions given to them or that the death of appellant's decedent was brought about by the

negligent manner in which these detectives performed the duties intrusted to them. For aught that appears from the petition, the shooting may have been their individual act inspired by feelings of revenge or hatred or done accidentally in some sportive moment. The petition, on demurrer, must be construed most strongly against the pleader, and when so construed, it must be held not to state a cause of action against the railroad for the shooting of Maxwell by the detectives.

Coming now to that part of the petition which attempts to fasten liability upon the railroad for the alleged failure to furnish quicker aid to appellant's decedent after he was shot than was furnished, we find that it is alleged that the wound of appellant's decedent had ceased to bleed at the time he was taken to the hospital, and that because there the physicians who took charge of the case undertook to probe the wound, the bleeding was started afresh by reason of which appellant's decedent died. This is a suit to recover for the death of appellant's decedent, and on this branch of the case, it clearly appears that appellant charges that the death of her decedent was caused by reason of the treatment he received in the hospital. It was not averred that the railroad was negligent in any manner in selecting this hospital or the physicians there who waited on appellant's decedent.

In Illinois Central Railroad Co. v. Buchanan, 126 Ky. 292, 103 S. W. 272, 273, 31 Ky. Law Rep. 722, 11 L. R. A. (N. S.) 711, the court thus states the rule applicable in such cases:

> "When the railroad company employs competent and skillful people, the measure of its duty to its employees is discharged. If these persons should be guilty of malpractice or other acts of negligence, the party injured by reason thereof must look to the individual causing the injury, and not to the railroad company." To the same effect are Black Mountain Corporation v. Thomas, 218 Ky. 497, 291 S. W. 737, and Western Union Telegraph Co. v. Mason, 232 Ky. 237, 22 S. W. (2d) 602.

Further appellant does not aver that either of the railroad detectives had anything to do with the selection of the hospital or the physicians who treated appellant's decedent. Such being the case, it follows that in so far

as the petition undertook to fasten liability on the railroad and its detectives for the negligent treatment of appellant's decedent resulting in his death after he was shot, it states no cause of action against either the railroad or the detectives. But, as hereinbefore stated, the petition is good as against the detectives for the shooting of the appellant's decedent which the petition alleged was the direct and proximate cause of the death of appellant's decedent.

The judgment as to the railroad is therefore affirmed; but as to the detectives, it is reversed, with instructions to overrule their demurrer to the petition and for further proceedings in conformity with this opinion.